UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
_____

    Gliee V. Gunsalus,
    Brian L. Gunsalus, Sr.

               Debtors/Plaintiffs,
                                                Bankruptcy Case No. 17-20445-PRW
        vs.                                 Adversary Proceeding No. 17-2008-PRW

    Ontario County, New York,
    John Doe,
    Jane Doe,

               Defendants.
_____

    Joseph M. Hampton,
    Brenda S. Hampton,

               Debtors/Plaintiffs,
                                                Bankruptcy Case No. 17-20459-PRW
        vs.                                 Adversary Proceeding No. 17-2009-PRW

    Ontario County of New York,
    John Doe,
    Jane Doe,

               Defendants.
_____

**DECISION AND ORDER
GRANTING MOTIONS TO DISMISS COMPLAINT**

PAUL R. WARREN, U.S.B.J.

      The Chapter 13 Debtors in each of these adversary proceedings seek to undo the consequences resulting from the failure to redeem their homes from real estate tax lien foreclosure

actions.[1] Ontario County brought those foreclosure actions under Article 11 of the New York Real Property Tax Law ("RPTL"). The Debtors do not dispute the fact that judgments of foreclosure were entered by the state court against their real property, after the Debtors failed to redeem the property by paying the delinquent taxes or by successfully defending the foreclosure actions. The Debtors do not claim that the foreclosure actions were infirm in any respect. Instead, the Debtors claim that the transfers of title to their homes should be set aside by this Court as constructively fraudulent conveyances, under 11 U.S.C. § 548(a)(1)(B).

The Debtors point the Court to its decision in *Canandaigua Land Dev., LLC v. County of Ontario* (*In re Canandaigua*), 521 B.R. 457 (Bankr. W.D.N.Y. 2014) (Warren, J.), *and vacated*, 2017 Bankr. LEXIS 1840 (June 29, 2017), and ask the Court to extend the *Canandaigua* holding to these cases. The County invites the Court to abandon its position in *Canandaigua*, insisting that these actions should be dismissed. Because the Court agrees with the County, that a judicially supervised tax foreclosure action conducted by the County in full compliance with New York's Article 11 RPTL is entitled to the presumption of having provided reasonably equivalent value for purposes of 11 U.S.C. § 548(a)(1)(B)(i), the complaints do not state a claim for which relief can be granted. The motion of the County to dismiss the complaint in each of these adversary proceedings, under Rule 12(b)(6) FRCP, is **GRANTED**. The complaint in each adversary proceeding is **DISMISSED,** with prejudice.

---

[1] The complaint in each of these adversary proceedings seeks identical relief, arising out of substantially similar operative facts. To the extent some facts are different, the differences are in degree only. The Court will issue a single decision, to be entered on the docket in each case. The caption used in this decision is for convenience. The cases are not being consolidated or joined.

## I.

## JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 157(a), 157(b)(1) and 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(H). The County has not objected to the Court's jurisdiction under Rule 7012(b) FRBP.

## II.

## ISSUE

Is the County entitled to the presumption of having provided reasonably equivalent value, for purposes of 11 U.S.C. § 548(a)(1)(B)(i), where it conducted a judicially supervised tax lien foreclosure action in strict compliance with the statutory requirements of Article 11 of New York's Real Property Tax Law? Having concluded that its decision in *Canandaigua*—answering the same question in the negative—resulted from a flawed application of the principles identified by the Supreme Court in *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994), the Court now answers the question in the affirmative.

## III.

## FACTS

The operative facts concerning the tax foreclosure actions giving rise to these adversary proceedings are not in dispute. A short review of those facts, taken from the complaints, will help frame the discussion.

3

A.  **The Gunsalus Situation**

Mr. and Mrs. Gunsalus owned a home located at 1338 White Road, in the Town of Phelps, County of Ontario, where they have lived for decades. (ECF AP No. 1 ¶¶ 18, 20).[2] The Gunsaluses failed to pay the 2014 real estate taxes on their home, totaling $1,236.52. (*Id.* ¶ 27). Those taxes were due on January 1, 2014. The Gunsaluses claim that their home had a value of $28,000, based on an appraisal commissioned for purposes of this litigation. (ECF AP No. 27, Affidavit ¶ 5). The Gunsaluses owned their home free and clear of any mortgages. (ECF AP No. 1 ¶ 53).

The 2014 real property taxes remained unpaid after a period of 10 months. (ECF AP No. 25, Part 2 ¶ 4). So, on November 10, 2014, enforcement of the lien for unpaid taxes began with the County including the Gunsaluses' property on the "List of Delinquent Taxes," filed in the County Clerk's Office, as required by RPTL § 1122. (*Id.*). The County then waited the required 21 months, from the date the taxes first became due, before commencing the *in rem* tax foreclosure action, as required by RPTL § 1123. (*Id.* ¶ 5). On October 2, 2015, the County commenced its tax lien foreclosure action by serving notice as required by RPTL § 1125(1)(a). (ECF AP No. 1 ¶ 27). The statutory notice informed the Gunsaluses that the deadline to redeem their home from foreclosure was January 15, 2016. (*Id.*). That same notice informed the Gunsaluses that they could serve an answer in defense of the foreclosure action, which needed to be done by January 15, 2016, if at all. (ECF AP No. 25, Ex. B). It is undisputed that the County complied with both the service and publication requirements under RPTL §§ 1125(b)(1) and 1124(1).

The Gunsaluses did not redeem the property by paying the past due taxes. Instead, on January 15, 2016, they served and filed an answer to the foreclosure petition. (ECF AP No. 1 ¶ 32).

---

[2]    References to the docket for the adversary proceeding in each case are identified as "ECF AP" and references to the docket in the main bankruptcy case are identified as "ECF BK."

4

The County moved for summary judgment on its petition under RPTL § 1136. (ECF AP No. 25, Part 2 ¶ 22). The Gunsaluses opposed that motion and cross-moved for an extension of the redemption deadline. (ECF AP No. 1 ¶ 33). The Ontario County Supreme Court denied the Gunsaluses' cross-motion. (*Id.* ¶ 35). The state court then granted the County's motion. (*Id.* ¶¶ 35-36). A final judgment of foreclosure was entered on June 1, 2016. (*Id.* ¶ 54). The Gunsaluses did not appeal that judgment or seek reconsideration, and the deadline to do so has long since passed. (ECF AP No. 25, Part 2 ¶ 23). By operation of RPTL § 1136, the final judgment of foreclosure awarded the County possession of and the right to take title to the Gunsaluses' home. At that point, over two years had passed since the unpaid taxes first became due.

Nearly a year after entry of the judgment of foreclosure in favor of the County, an auction re-sale of the property was scheduled for May 17, 2017, under RPTL § 1163. (ECF AP No. 1 ¶ 42). In an effort to stop the sale of their home, the Gunsaluses filed a Chapter 13 petition on April 28, 2017. (ECF BK No. 1). And, on May 3, 2017, the Gunsaluses filed a complaint initiating this adversary proceeding, alleging that the taking of their home was a constructively fraudulent transfer under 11 U.S.C. § 548(a)(1)(B). (ECF AP No. 1). The Gunsaluses contend that the involuntary transfer of their home, worth $22,000 (the price paid at foreclosure), to satisfy delinquent taxes of approximately $1,200, did not provide reasonably equivalent value for that property. (*Id.* ¶¶ 56-59). The Gunsaluses also complain that the County sold their home at auction for $22,000 to satisfy unpaid taxes of $1,236.52, and that it is inequitable for the County to keep the surplus amount. (*Id.* ¶ 49). As a remedy, the Gunsaluses seek to have this Court avoid the transfer of the property and permit them to repay the County the delinquent taxes over 5 years under their Chapter 13 plan. (*Id.* ¶ 45).

**B.     The Hampton Situation**

Mr. and Mrs. Hampton owned a home located at 4583 Lincoln Avenue, in the Town of Gorham, County of Ontario, where they have lived since 2010. (ECF AP No. 1 ¶¶ 18, 20). The Hamptons failed to pay the 2015 real estate taxes on their home, totaling $5,201.87. (*Id.* ¶ 31). Those taxes were due January 1, 2015. The Hamptons claim that their home had a value of $87,000, based on an appraisal commissioned for purposes of this litigation. (ECF AP No. 28, Affidavit ¶ 5). The Hamptons owned their home free and clear of any mortgages. (ECF AP No. 1 ¶ 20).

The 2015 real property taxes remained unpaid after a period of 10 months. (ECF AP No. 26, Part 2 ¶ 4). So, on November 13, 2015, enforcement of the lien for unpaid taxes began with the County including the Hamptons' property on the "List of Delinquent Taxes," filed in the County Clerk's Office, as required by RPTL § 1122. (*Id.*). The County then waited the required 21 months, from the date the taxes first became due, before commencing the *in rem* tax foreclosure action, as required by RPTL § 1123. (*Id.* ¶ 5). On October 3, 2016, the County commenced its tax lien foreclosure action by serving notice, as required by RPTL § 1125(1)(a). (ECF AP No. 1 ¶ 31). The statutory notice informed the Hamptons that the deadline to redeem their home from foreclosure was January 13, 2017. (*Id.*). That same notice informed the Hamptons that they could serve an answer in defense against the foreclosure action, which needed to be done by January 13, 2017, if at all. (ECF AP No. 26, Ex. B). It is undisputed that the County complied with both the service and publication requirements under RPTL §§ 1125(b)(1) and 1124(1).

The Hamptons neither redeemed the property by paying the past due taxes nor served an answer in defense of the foreclosure petition. (ECF AP No. 1 ¶ 32). As a result, a default judgment of foreclosure was entered in favor of the County on March 2, 2017. (*Id.* ¶ 34). The Hamptons did

6

Case 2-17-02009-PRW    Doc 33    Filed 11/06/17    Entered 11/06/17 16:55:51    Desc Main
Document    Page 6 of 18

not file an application in state court seeking to vacate the default judgment within 30 days, as permitted under RPTL § 1131. (ECF AP No. 26, Part 2 ¶ 21). On April 7, 2017, the state court's default judgment of foreclosure became non-reviewable under the state statute. (*Id.* ¶ 20). By operation of RPTL § 1136, the final judgment of foreclosure awarded the County possession of and the right to take title to the Hamptons' home.

An auction re-sale of the property was scheduled for May 17, 2017, under RPTL § 1163. (ECF AP No. 1 ¶ 44). On May 2, 2017, the Hamptons filed a Chapter 13 petition. (ECF BK No. 1). And, on May 5, 2017, the Hamptons filed a complaint initiating this adversary proceeding, alleging that the taking of their home was a constructively fraudulent transfer under 11 U.S.C. § 548(a)(1)(B). (ECF AP No. 1). The Hamptons contend that the involuntary transfer of their home, worth $87,000, to satisfy delinquent taxes of approximately $5,200, did not provide reasonably equivalent value for that property. (*Id.* ¶¶ 57-60; ECF AP No. 28 at 13). The Hamptons also complain that the County sold their home at auction for $27,000 to satisfy unpaid taxes of $5,201.87, and that it is inequitable for the County to keep the surplus amount. (ECF AP No. 1 ¶ 50).

## IV.

## DISCUSSION

### A. Rule 12(b)(6) FRCP –Applicable Legal Standard

When considering a motion under Rule 12(b)(6), seeking dismissal of a complaint for failure to state a claim upon which relief can be granted, the Court must accept factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). The Court must draw reasonable inferences from the complaint in favor of the plaintiff, in determining whether the plaintiff provides "enough facts to state a claim to

7

relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570; *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016); *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010); *see also Wacker v. JP Morgan Chase & Co.*, No. 16-2482-cv (L), 2017 U.S. App. LEXIS 1763, at *2 (2d Cir. Feb. 1, 2017). A complaint is plausible on its face when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. While the facts alleged in a complaint may turn out to be "self-serving and untrue," "a court at this stage of [a] proceeding is not engaged in an effort to determine the true facts. The issue is simply whether the facts the plaintiff alleges, if true, are plausibly sufficient to state a legal claim." *Columbia Univ.*, 831 F.3d at 48. The court should not consider facts outside the "four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002); *In re Cornerstone Homes, Inc.*, 567 B.R. 37, 45-46 (Bankr. W.D.N.Y. 2017) (Warren, J.).

B. **Elements Necessary to a Cause of Action for Constructive Fraud Under 11 U.S.C. § 548(a)(1)(B)**

To state a cause of action under 11 U.S.C. § 548(a)(1)(B), the Debtors must allege facts supporting each of the necessary statutory elements: (1) the debtor had an interest in property; (2) a transfer of the property occurred within 2 years of the petition; (3) the debtor was insolvent at the time the transfer occurred or was rendered insolvent by the transfer; and (4) the debtor received less than reasonably equivalent value in exchange for the transfer.

The issue raised by the motions to dismiss these adversary proceedings is whether the last element, absence of reasonably equivalent value, can be adequately pled by the Debtors so as to

8

Case 2-17-02009-PRW    Doc 33    Filed 11/06/17    Entered 11/06/17 16:55:51    Desc Main
Document      Page 8 of 18

survive a motion to dismiss under Rule 12(b)(6). If the County is not entitled to the presumption of having given reasonably equivalent value, the complaints will survive the motions to dismiss. However, if the County is entitled to a presumption of having given reasonably equivalent value—by extension of the *BFP* holding to these tax lien foreclosures—the Debtors cannot allege any set of facts that would tend to prove the absence of "reasonably equivalent value," a necessary element to a claim under 11 U.S.C. § 548(a)(1)(B)(i).

C. **Ontario County is Entitled to the Presumption of Having Provided Reasonably Equivalent Value Under *BFP v. Resolution Trust Corp.***

The Gunsaluses and Hamptons claim that the transfer of title to each of their homes is avoidable, as a constructively fraudulent transfer, under 11 U.S.C. § 548(a)(1)(B). (Case No. 17-2008, ECF No. 1; Case No. 17-2009, ECF No. 1). The Debtors urge the Court to extend its holding in *Canandaigua* to these adversary proceedings, by finding that the County is not entitled to a presumption of having provided reasonably equivalent value for the property transferred. (Case No. 17-2008, ECF No. 26 at 7-18; Case No. 17-2009, ECF No. 28 at 7-17). The County insists that, in *Canandaigua*, this Court focused too much on the presence (or absence) of competitive bidding in its refusal to extend the *BFP* reasoning to a tax lien foreclosure conducted under New York's Article 11 RPTL. (Case No. 17-2008, ECF No. 28 ¶¶ 4-13; Case No. 17-2009, ECF AP No. 30 ¶¶ 4-13). The County urges the Court to abandon *Canandaigua* and find that the County is entitled to a presumption of having provided reasonably equivalent value in exchange for the transfer. "Wisdom too often never comes, and so one ought not to reject it merely because it comes late." *Henslee v. Union Planters Nat'l Bank & Trust Co.*, 335 U.S. 595, 600 (1949) (Frankfurter, J., dissenting). Having had the benefit of several years—after issuing the *Canandaigua* decision—to study Justice Scalia's majority opinion in *BFP*, the Court must borrow from Justice Bramwell, in saying: "The matter does not appear to me now as it appears to have appeared to me then."

9

*Andrews v. Styrap*, 26 L.T.R. (N.S.) 704, 706 (Ex. 1872) (*quoted in McGrath v. Kristensen*, 340 U.S. 162, 178 (1950) (Jackson, J., concurring)).

### 1. *Canandaigua's* Rationale and *BFP* Reexamined

This Court, in *Canandaigua*, found that the "*BFP* presumption" did not apply to tax foreclosures conducted under Article 11 RPTL—reaching that conclusion by focusing on the absence of "competitive bidding" under the statutory procedures provided for under Article 11 RPTL. After all, the *BFP* Court said, in limiting its holding to mortgage lien foreclosures, that its consideration of other types of forced sales, such as those to satisfy tax liens, "*may be different*." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537 n.3 (1994) (emphasis added). Lower courts have struggled with *BFP* in the context of tax lien foreclosures. Some courts (including this Court) may have inadvertently elevated the phrase "may be different" to "must be different." Those courts focused on procedural differences between the state's mortgage foreclosure statutes and its tax lien foreclosure statutes. Some of those courts found that the absence of competitive bidding in a state's tax lien foreclosure statute was a basis for holding that *BFP* did not apply to tax foreclosures, even where those tax lien foreclosure actions were conducted in strict conformity with all of the procedures dictated by state law. *See In re Varquez*, 502 B.R. 186, 193 (Bankr. D.N.J. 2013); *In re Williams*, 473 B.R. 307, 320 (Bankr. E.D. Wis. 2012), *aff'd in part and remanded in part sub nom. City of Milwaukee v. Gillespie*, 487 B.R. 916 (E.D. Wis. 2013); *In re Murphy*, 331 B.R. 107, 120 (Bankr. S.D.N.Y. 2005); *In re Herkimer Forest Prods. Corp. v. Cnty. of Clinton*, No. 04-13978, 2005 Bankr. LEXIS 3260, at *13 (Bankr. N.D.N.Y. July 26, 2005); *In re Harris*, No. 01-10365, 2003 Bankr. LEXIS 2323, at *15-18 (Bankr. N.D.N.Y. Mar. 11, 2003). But, it may be that a great disparity between the fair market value of a property and the amount of the tax lien being foreclosed was the underlying force that pulled the courts in that direction.

10

The huge disparity between the fair market value of the property in *Canandaigua* ($300,000-$425,000) and the amount of delinquent taxes ($16,594.99) was the shiny object that pulled this Court in the same direction. A similar visceral reaction, by the *BFP* dissenters, to a large disparity between fair market value of the property and the lien being foreclosed—that same shiny object—is evident in the opening sentence of Justice Souter's dissent: "The Court today holds that . . . Congress intended *a peppercorn paid at a non-collusive and procedurally regular foreclosure sale to be treated as the 'reasonable equivalent' of the value of a California beachfront estate.*" *BFP*, 511 U.S. at 549 (emphasis added). And nearly 25 years after *BFP*, many courts faced with tax lien foreclosures (including this Court in *Canandaigua*) continue to start their analysis of a fraudulent conveyance claim under § 548(a)(1)(B)(i) of the Code with the fair market value of the foreclosed real estate, compared to the amount of the tax lien, and then read *BFP* as turning on one essential factor: the presence or absence of competitive bidding in a state's foreclosure statute. *See, e.g.*, *In re Smith*, 811 F.3d 228, 239 (7th Cir. 2016) ("[W]e read *BFP* as depending . . . on the central role of competitive bidding in an auction for the value of the property itself."). All well and good; but a careful re-reading of the *BFP* decision leads this Court to the conclusion that the presence or absence of "competitive bidding" was not the keystone to the *BFP* majority's holding.

The majority in *BFP* heaped considerable scorn on the Seventh Circuit's decision in *In re Bundles*, 856 F.2d 815 (7th Cir. 1988), noting that the Circuit "refer[s] to fair market value as the benchmark against which determination of reasonably equivalent value is to be measured." *BFP*, 511 U.S. at 536-37. The Supreme Court in *BFP* rejected the use of fair market value as a benchmark, in the context of a forced sale. The *BFP* majority also rejected "the *Bundles* inquiry into whether the state foreclosure proceedings 'were calculated . . . to return to the debtor-mortgagor his equity in the property.'" *Id.* at 540 (quoting *In re Bundles*, 856 F.2d at 824). But,

11

while *BFP* wholly rejected the *Bundles* approach in the context of a mortgage foreclosure, it left open the possibility that things may be different for tax lien foreclosures. *Id.* at 537 n.3. In that light, the recent decision in *Smith* can fairly be viewed as the Seventh Circuit continuing to stubbornly cling to its *Bundles* approach—using fair market value as the benchmark and looking to see whether the state statute returns to the debtor any equity in the property—when striking down a tax foreclosure judgment as a fraudulent transfer under § 548(a)(1) of the Code.

*BFP* recognized that "the terms for foreclosure sale are not *standard*. They vary considerably from State to State, depending upon . . . how the particular State values the divergent interests of debtor and creditor." *Id.* (emphasis in original). To conclude, as this Court did in *Canandaigua* (and the Seventh Circuit did last year in *Smith*) that, among the considerably varying requirements of state foreclosure laws listed in *BFP*, "competitive bidding at auction" was the single unvarying and universally necessary requirement for the *BFP* presumption to apply is not supported by the language used by the *BFP* majority. *BFP* observed that "[f]oreclosure laws ***typically require*** notice to the defaulting borrower, a substantial lead time before the commencement of foreclosure proceedings, publication of a notice of sale, and strict adherence to prescribed bidding rules and auction procedures." *Id.* at 542 (emphasis added). The Supreme Court did not attempt to define a sub-set of state foreclosure law requirements that it deemed to be "mandatory" for the *BFP* holding to apply. The majority's use of the phrase "typically require" in *BFP* connotes something common among state laws, but not universal or absolute—and certainly not "mandatory." If one can correctly interpret *BFP*'s use of the phrase "typically require" as meaning the same thing as "mandatory," then it would logically follow that: "*Drivers of motor vehicles approaching an intersection are typically required to stop if the traffic light is red*." Of course, that would be incorrect.

Instead, *BFP* recognized three essential and necessary key protections common to all state foreclosure statutes: (1) notice; (2) ample opportunity to cure; and (3) strict adherence to the requirements of those state statutes. *See In re Crespo*, 569 B.R. 624, 631 (E.D. Pa. 2017) (quoting *In re Lord*, 179 B.R. 429, 436 (Bankr. E.D. Pa. 1995)). And, "[w]hen [the] procedures [under a particular state's law] have been followed, however, it is 'black letter' law that mere inadequacy of the foreclosure sale price is not basis for setting the sale aside, although it may be set aside (*under state foreclosure law*, rather than fraudulent transfer law) if the price is so low as to 'shock the conscience or raise a presumption of fraud or unfairness.'" *BFP*, 511 U.S. at 542 (emphasis in original). "[T]he *BFP* Court's analysis of § 548 expressly eschewed any consideration of the substantive value received in a forced-sale context and instead pinned the validity of the transfer on whether the forced sale was noncollusive and conducted in compliance with state law." *In re T.F. Stone Co.*, 72 F.3d 466, 470 (5th Cir. 1995). Here, there is no dispute that the foreclosure of the tax liens was non-collusive and conducted in strict compliance with prescribed procedures under the state law. Article 11 RPTL provides for notice, ample opportunity to cure, judicial supervision of the action, and requires strict adherence to the procedures spelled out in the statute. Under *BFP*, the fact that the value of the property may have exceeded (even greatly) the amount of the tax liens being foreclosed is not a basis to set aside the transfer of title under § 548(a)(1)(B) of the Code.

### 2. The County's Refusal to Extend Redemption Deadline and Retention of Surplus Equity Does Not Invalidate Transfer

Over 60 years ago, a unanimous Supreme Court rejected any consideration of the fair market value of a property, in comparison to the dollar amount of extremely modest government liens being foreclosed by the City of New York to recover unpaid water bills through strict foreclosure, under the statutory counterpart to the state's tax lien foreclosure statute. *Nelson v. City of N.Y.*, 352 U.S. 103 (1956). In *Nelson*, the City foreclosed liens against two pieces of real property to collect

unpaid water charges. The first foreclosed parcel was valued at $6,000 and the lien for unpaid water charges was $65.00. *Id.* at 105. The second foreclosed parcel was valued at $46,000 and the lien for unpaid water charges was $814.50. *Id.* at 106. In both actions, the Court observed that notice was given as required by the state statute, and the owners failed to either redeem the property or serve an answer to the City's foreclosure complaints. *See id.* at 105-09. Judgments of foreclosure were entered by default and the City took title. *Id.* at 106. Some time later, the City sold the first parcel for $7,000 and retained all of the surplus proceeds. *Id.* The City kept the second parcel, and retained all of its surplus value. *Id.* The former owners unsuccessfully challenged the transfer of title to the properties in state court, after the City refused to disturb the default judgments of foreclosure. The owners then brought suit in the federal courts, asserting constitutional challenges to the taking of their property. *Id.* at 108-09.

The Supreme Court rejected the former property owners' constitutional challenges to the City's strict foreclosure statute. While the *Nelson* Court had before it a constitutional challenge, not a fraudulent transfer claim under the Bankruptcy Code, the Court's holding bolsters the view that due process considerations, not fair market value (the shiny object), should carry the day: "What the City of New York has done is to foreclose real property for charges four years delinquent and, in the absence of timely action to redeem or to recover any surplus, retain the property or the entire proceeds of its sale. We hold that nothing in the Federal Constitution prevents this where the record shows *adequate steps were taken to notify the owners of the charges due and the foreclosure proceedings*." *Nelson*, 352 U.S. at 110 (emphasis added). Perhaps the *BFP* decision might have proved to be more useful to the lower courts had its mischievous "footnote 3" been replaced with a citation to *Nelson*—and the *Nelson* Court's discussion of the factors that were actually considered in connection with foreclosures to enforce government liens (such as tax liens). Those factors are

14

notice and an opportunity to cure. *See id.* at 110. More recently, the Second Circuit has also rejected constitutional challenges to both (1) a taxing authority's refusal to extend the redemption date after entry of a default judgment of foreclosure and (2) a taxing authority's retention of the surplus proceeds generated from the auction re-sale of the property. *Miner v. Clinton Cnty.*, 541 F.3d 464 (2d Cir. 2008) (citing *Nelson* as authority). Here, the Debtors make similar arguments in an attempt to amplify their claim under 11 U.S.C. § 548(a)(1)(B) of the Code, although the Debtors do not make any constitutional challenges to Article 11 RPTL.

No doubt, upholding these tax lien foreclosure judgments is a harsh result for the Debtors. Both the Gunsaluses and Hamptons have experienced difficult family health issues and are of limited financial means. Losing title to their homes—along with any equity—because of their failure to pay modest real estate taxes will cause untold hardships. Their attorneys point out that Article 11 RPTL, as implemented by Ontario County, is a particularly unforgiving statute. In response to a similar argument in *Nelson*, the unanimous Supreme Court observed: "It is contended that this is a harsh statute. The New York Court of Appeals took cognizance of this claim and spoke of the 'extreme hardships' resulting from the application of the statute in this case. But it held, as we must, that relief from the hardship imposed by a state statute is the responsibility of the state legislature and not of the courts, unless some constitutional guarantee is infringed." *Nelson*, 351 U.S. at 110-11. So too here. The harsh result worked upon the Debtors under New York's Article 11 RPTL is not a reason to interfere with state law through the Bankruptcy Code, absent a clear Congressional mandate.

### 3. Foreclosure of Tax Liens Involve Essential State Interests

As *BFP* cautioned the lower courts, "Federal statutes impinging upon important state interests cannot . . . be construed without regard to the implications of our dual system of

15

Case 2-17-02009-PRW    Doc 33    Filed 11/06/17    Entered 11/06/17 16:55:51    Desc Main
Document      Page 15 of 18

government. . . . To displace traditional state regulation in such a manner, the federal statutory purpose must be clear and manifest . . . . Otherwise, the Bankruptcy Code will be construed to adopt, rather than to displace, pre-existing state law." *BFP*, 511 U.S. at 544-45 (citations omitted) (internal quotation marks omitted). *BFP* found that the statutes governing mortgage lien foreclosures were a reflection of an "essential state interest"—that being the security of real estate title. *Id.* at 544. To find that the government's foreclosure of its real estate tax liens does not involve an essential state interest (or involves some lesser degree of state interest) is to ignore reality. Comparing the state law interest in mortgage foreclosures with the state law interest in foreclosures to collect delinquent taxes, led one court to find that "the ramifications [concerning tax foreclosures] are more fundamental and of greater importance. The taxes involved are the lifeblood of government units and enable them to carry out essential government functions for the benefit of their citizens." *In re RL Mgmt. Grp., LLC*, No. 13-51849, 2014 Bankr. LEXIS 206, at *17 (E.D. Mich. Jan. 10, 2014).

Real property taxes fund essential and mandated county government services and programs, including: (1) social services—public assistance and food stamps, mental hygiene, public health for the elderly and disabled; (2) public safety—sheriff's departments, county detention facilities, district attorney, public defender, juvenile offender programs; (3) transportation and public works—building and maintaining county highways, bridges, and infrastructure projects; (4) public services—county clerk, motor vehicle departments, board of elections, child support collection, and veterans' services. Local governmental units within counties, such as school districts, rely heavily on real estate tax revenues to function. (Case No. 17-2008, ECF No. 25, Part 4 at 9-10; Case No. 17-02009, ECF No. 26, Part 4 at 9-10). These are not just important state interests; they are vital state interests. The collection of real estate taxes, to enable the government to function, is an

16

essential state interest. To paraphrase *BFP*: The statute enacted by the New York legislature, to allow local government units to enforce liens for unpaid taxes, reflects "legislatively crafted rules governing the foreclosure process, to achieve what [the state legislature] considers the proper balance between the needs of [government units and property owners]." *BFP* 511 U.S. at 541-42.

Here, the Gunsaluses and Hamptons were provided with notice of the delinquent taxes and notice of the commencement of the action to foreclose the tax liens. Nearly two years elapsed between the date the taxes first became due and the commencement of the action to foreclose the tax liens, during which time the Gunsaluses and Hamptons were provided with ample opportunity to redeem the property by curing the tax arrears. The tax foreclosure proceedings were conducted under the direct judicial supervision of the New York courts, with strict adherence to the statutory requirements of Article 11 RPTL. Judgments of foreclosure were granted by the state court, after notice and an opportunity to be heard. The statutorily proscribed time to appeal the judgments of foreclosure passed, without challenge.

After harmonizing the Supreme Court's holdings in *Nelson* and *BFP*, the Court finds no manifest and clear federal statutory purpose upon which the Bankruptcy Code should be construed or applied to interfere with property tax lien foreclosures conducted by the government under New York's Article 11 RPTL. Because the Court holds that the County is entitled to a conclusive presumption of having provided reasonably equivalent value, within the meaning of 11 U.S.C. § 548(a)(1)(B)(i), the Gunsaluses and Hamptons cannot state all the necessary elements of a claim for a constructively fraudulent transfer under the Code. *See In re Crespo*, 569 B.R. 624 (E.D. Pa. Mar. 30, 2017); *In re Houchins*, No. 16-20740, 2017 Bankr. LEXIS 891 (Bankr. D. Conn. Mar. 31, 2017); *In re Jacobson*, 523 B.R. 13 (Bankr. D. Conn. 2014); *In re RL Mgmt. Grp., LLC*, No. 13-

51849, 2014 Bankr. LEXIS 206 (Bankr. E.D. Mich. Jan. 10, 2014). The complaint in each of these adversary proceedings is dismissed, under Rule 12(b)(6) FRCP.

V.

CONCLUSION

The complaint in each adversary proceedings is dismissed for failure to state a claim upon which relief can be granted because the Court holds that a tax lien foreclosure action, conducted in strict compliance with New York's Article 11 RPTL, is conclusively presumed to have provided reasonably equivalent value for purposes of 11 U.S.C. § 548(a)(1)(B)(i). The motions by Ontario County requesting dismissal of each complaint, under Rule 12(b)(6) FRCP, are **GRANTED**. The adversary proceedings are **DISMISSED**, with prejudice. The Stipulated Orders (Case No. 17-2008, ECF No. 15; Case No. 17-2009, ECF No. 16) temporarily restraining the County from taking certain steps in connection with the tax foreclosure judgments, such as transferring title to the properties, are of no further force or effect because these adversary proceedings have been dismissed.

**IT IS SO ORDERED.**

DATED: November 6, 2017 _____/s/_____
       Rochester, New York         HON. PAUL R. WARREN
                                               United States Bankruptcy Judge